THE CITY OF SARASOTA v. E. E. SKILLIN, et al.

178 So. 837.
Division A.
Opinion Filed July 19, 1937.
On Petition for Rehearing December 14, 1937.

*Harrison E. Barringer,* and *J. Velma Keen,* for Plaintiff in Error;

*Frank Reed,* for Defendants in Error.

TERRELL, J.—In 1927, the Legislature by Chapter 13403, incorporated "all of that part of Little Sarasota Key lying north of the Township line, separating, dividing, and drawn between Township 36 and Township 37, and lying and being situate in Section 36, Township 35, South Range 17 East" into the City of Sarasota, Florida.

In February, 1934, Appellees as complainants, filed their bill of complaint in the Circuit Court praying that the City of Sarasota be restrained from assessing, collecting, or advertising for sale and selling for non-payment of municipal taxes any of their lands lying and situated within the foregoing described addition thereto. A motion to dismiss the bill was denied, answer was filed and on final hearing, a decree was entered in compliance with the prayer of the bill. The instant appeal is from the final decree.

The first question with which we are concerned is whether or not a property owner in a municipality can challenge the validity of the act creating or enlarging the latter in a suit to enjoin the collection of municipal taxes.

It is quite true that this court has approved a proceeding by quo warranto as the general method of seeking relief where a municipality undertakes to exercise control of territory over which it has no jurisdiction. State, *ex rel.* Attorney General, v. City of Sarasota, 92 Fla. 563, 109 So. 473. But in State, *ex rel.* Attorney General, v. City of Avon Park, 108 Fla. 641, 149 So. 409, we held that where unbenefited rural lands were included in a municipality and the owner has no adequate legal remedy and is not estopped, equity may enjoin the collection of municipal taxes thereon. The latter case would seem to be a complete

answer to this question as under the facts presented, injunction affords a more expeditious remedy.

It is next contended that appellees have estopped themselves from seeking relief therein because of having voted in municipal elections, paid municipal taxes, and by having plotted their property, and dedicating streets thereon to the municipality.

Complainants below base their prayer for relief on the ground that the lands in question were remote from the City of Sarasota, were separated from it by Little Sarasota Bay, were wild land unoccupied, were sparsely settled, and had at no time received any municipal benefits nor were any in prospect. On the merits, the chancellor found for the complainants and his judgment finds ample support in the record. In State, *ex rel.* Attorney General, v. Town of Boynton Beach, decided this date, we have discussed the question and announced the law applicable in cases where territory has been improperly included in a municipality. What we there said is equally applicable in this case.

The judgment of the chancellor is accordingly affirmed on authority of State, *ex rel.* Attorney General, *et al.,* v. Town of Boynton Beach, decided this date, and State, *ex rel.* Attorney General, *et al.,* v.City of Avon Park, *supra.*

Affirmed.

ELLIS, C. J., and BUFORD, J., concur.

CHAPMAN, J., concurs in the opinion and judgment.

BROWN, J., dissents.

BROWN, J. (dissenting).—The holding in this case that the appellees as complainants in the court below could go into equity and enjoin the collection of municipal taxes upon their lands on the ground that said lands were rural in character, received no municipal benefits, and that the Act embracing said lands within the municipality was there-

fore without constitutional force and effect as to said lands, and that therefore the city had no right to levy taxes thereon, is based upon the case of State, *ex rel.* Attorney General, v. City of Avon Park,, 108 Fla. 641, 149 So. 409.

I do not think that this question was really settled by the case cited. That case was a quo warranto case, in which the Attorney General joined by a number of corelators sought to have an Act of the Legislature enlarging the city limits of Avon Park declared unconstitutional and void in so far as it attempted to embrace within the city the lands of the corelators. It is true that in the opinion of Mr. Justice WHITFIELD in that case it was held that the land owners, corelators, had a remedy in equity to enjoin municipal taxation of their unbenefited rural lands, and that judgment of ouster in the quo warranto proceedings should be denied as to co-relators' lands, which were scattered through the added territory, there being no prayer to oust the municipality from *all* lands so included by the Act. Mr. Justice TERRELL, and Circuit Judges Campbell and Johnson, sitting in the places of Mr. Chief Justice DAVIS and Mr. Justice ELLIS, concurred in said opinion. Mr. Justice BUFORD concurred specially, and the writer dissented to that part of the opinion above referred to. The order which was made as a result of that opinion was as follows:

"As there is no prayer to oust the city from all the territory covered by the Special Acts of 1925 and 1927 and as the lands of the several corelators are so scattered and otherwise conditioned that an ouster as to such lands alone is not on this record a proper function of a quo warranto judgment, the motions to strike the amended answer are denied, and the demurrer to the amended answer is over-

ruled with leave to the relators to proceed as they may be advised.

After this order was made, the information was amended by the Attorney General so. as to test the right of the municipality to exercise municpal functions over all the territory which had been added to the city by the legislative Acts in question. The cause was reargued after the amendment, Circuit Judge Johnson continued to sit in lieu of Mr. Chief Justice DAVIS who was disqualified. In the *per curiam* opinion rendered on the reargument of the case, it was stated:

"After having fully considered the briefs presented and the argument of counsel, Mr. Presiding Justice WHITFIELD, Mr. Justice TERRELL, and Circuit Judge JOHNSON are of the opinion that the demurrer to the amended answer should be overruled. While Mr. Justice ELLIS, Mr. Justice BROWN and Mr. Justice BUFORD are of the opinion that the demurrer to the amended answer should be sustained. This is an original proceeding. It requires a majority of the court sitting to determine affirmatively that a demurrer to a pleading be sutsained. Therefore, the court being evenly divided, the demurrer here to the amended answer must be overruled."

"The answer being held good against attack by DEMUR-.RER presents issues of fact which in quo warranto proceedings the parties have the right to have determined by jury trial. This court is without facilities for impaneling· juries and conducting jury trials and for that reason this cause will now be dismissed without prejudice to the parties to institute like proceedings in the circuit court. for the purpose of determining and having adjudicated the questions involved. It is so ordered."

Thus, the court being equally divided, on the final deci-

sion of the case, as regarded the question of the sufficiency of the city's answer, when attacked on demurrer, I do not think that the question here involved, as to the right of persons owning land within the limits of a city as established by the legislature, to *enjoin* the city from imposing or collecting taxes on said land, for the reason here involved, or that were involved in the cited case, was conclusively settled by the decision in that case. I consider the question as still an open one in this jurisdiction.

The permanent injunction granted against the city in the court below creates an anomalous situation. The city is enjoined from collecting taxes on lands within its limits, yet the city is not ousted from jurisdiction over such lands. The lands are left within the city's boundaries, but in effect are declared to be exempt from taxation. Thus, it appears that the injunction commands the city to do that which it has no right to do under the Constitution, as long as these lands remain within its limits.

Section 1 of Article IX of the Constitution provides that the Legislature shall provide for a uniform and equal rate of taxation (except as to intangible property) and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, except such property as may be exempt by law for municipal, educational, literary, scientific, religious or charitable purposes; and Section 5 of Article IX requires counties and incorporated cities or towns to tax all property upon the principles established for State taxation.

Therefore, as I see it, the City of Sarasota is compelled by the Constitution to continue to levy and collect taxes on these lands as long as they remain within the limits of the city as fixed by the Legislature, and the only remedy which the appellees properly have is to seek, by way of quo war-

ranto proceedings, a judgment of ouster which would re-move these lands from the jurisdiction of the city for any purpose, or else seek relief by legislative action. In the case of Bateman v. Florida Commercial Co., 26 Fla. 423, 8 So. 51, the appellee sought to enjoin the tax collector of Punta Gorda from selling its lands for municipal taxes. The bill alleged that the town had not been legally incorpo-rated and that therefore the assessment and levy of taxes by the town could not be enforced. This Court said:

"This position cannot be maintained, because the legality of a municipal corporation cannot be called in question by bill for an injunction, the complainant having its remedy at law by quo warranto." Robinson v. Jones, 14 Fla. 256; MacDonald v. Rehrel, 22 Fla. 198."

Quo warranto is generally regarded as the exclusive rem-edy to test the legal right to be a municipal corporation or to enjoy and exercise a corporate franchise granted by the State. 17 Encyc. Pldg. & Prac. 393-412; High on Injunc-tions, Section 1235. Injunction does not lie to test the legal existence of a corporate franchise. MacDonald v. Rehrer, 22 Fla.. 198; High on Injunctions, Section 1261; 2 Kent's Com., 8th Ed. 347.

Indeed, the right to exercise municipal franchises cannot be challenged by the individual citizen. The existence of such a franchise can only be challenged by an information in the nature of a quo warranto to be filed in the name of the State by and in the discretion of the Attorney General. State v. Gleason, 12 Fla. 190; Robinson v. Jones, 14 Fla. 256; Dillon Munic. Corp. 5th Ed., Section 1560. Nor can any collateral attack be made upon the existence of a mu-nicipal corporation. Town of Enterprise v. State, 29 Fla. 128.

In the unanimous opinion of this Court in the case of

State v. City of Sarasota, 92 Fla. 563, 109 So. 473, it was said:

"Quo warranto proceedings in the name of the State are generally recognized as the proper method of seeking relief where a municipality undertakes to exercise control over disputed territory. * * * In some of the states, where a municipality is required or allowed to legally tax farm or rural lands within its limits at a different rate from that assessed against property in the built-up portions of the city, the remedy by injunction is permitted where the same tax rate is imposed on such outlying lands receiving no city benefits as on those that do; but such remedy is not available in this state, where all property within the municipal limits must be taxed at an 'equal and uniform rate' and upon a just valuation.' Article IX, Sections 1 and 5, State Const. Injunction, however, may lie, in proper cases, to enjoin the unlawful or unconstitutional use of powers granted by the state, though it cannot be used to test the legal existence of public or corporate franchises."

This is not a case to enjoin the unlawful or unconstitutional use of powers granted by the State. There is nothing unlawful or unconstitutional about the exercise by a municipal corporation of its constitutional duty to impose taxes upon all lands and other property not exempted by law, within its corporate limits.

This court has been called on to decide many cases involving questions similar to that presented in this case. In none of them so far has relief been sought successfully by a bill to enjoin the collection of taxes. Invariably hitherto the remedy, whether granted or refused, was by quo warranto proceedings. The first case in which this Court held that parties owning rural lands situated entirely beyond the range of municipal benefits could get relief in the courts,

on the ground that the Act of the Legislature wrongfully embracing such lands within the city was unconstitutional and subject to judicial review, was the case of State, *ex rel.* Davis, v. City of Stuart, 97 Fla. 69, 120 So. 335. Before that case was decided it was generally considered in this and most other jurisdictions in this country that the action of the Legislature in establishing municipal boundaries was not subject to judicial review. In that case relief was sought in quo warranto proceedings brought in the name of the Attorney General and some thirty corelators, with the result that the annexation Act was held unconstitutional and a large body of land was ousted from the jurisdiction of the city of Stuart. And in that case it was said, by a unanimous Court, that:

"If the relator and his corelators are entitled to judicial relief of any sort it must be conceded that they have here the proper, and probably the only available remedy. See State, *ex rel.,* v. City of Sarasota, *supra,* in which case there was an unsuccessful effort to raise the very question and obtain a decision thereon, that is now squarely presented."

The lands in question here were incorporated within the limits of the City of Sarasota by the Legislature of this State. It has never been ousted from jurisdiction of such lands, by quo warranto proceedings or otherwise. I do not see how this Court can consistently hold that the city can be enjoined on a bill in equity at the suit of private individuals, from exercising its municipal franchise of taxation, which is perhaps the most vital of all its corporate franchises. If the city has been putting an unjust valuation on these lands for the purposes of municipal taxation, there are remedies provided for relief from that kind of action. But as long as these lands remain within the limits of the city, it is, to my mind, the positive constitutional duty of

the city authorities to impose and collect taxes at a uniform rate and upon a *just* valuation, as required by the Constitution.

If we set the precedent in this case that a private individual can enjoin a city from taxing his property because that particular property does not receive any municipal benefits, although it is located within the municipal limits, and so remains even after the injunction is granted, I do not know where such a precedent will lead us. Furthermore, to do so would in my opinion be a departure from the principles established by our previous decisions, some of which are above cited.

## On Rehearing

Per Curiam.—The petition for rehearing including argument and briefs of counsel in this cause have been considered but we find no law or theory therein on which our former opinion should be modified or receded from. It is accordingly reaffirmed on rehearing.

Affirmed.

Ellis, C. J., and Terrell, Buford and Chapman, J. J., concur.

Brown, J., dissents.