193 So.2d 195 (1966)
M.L. WATSON, P.L. Watson, George B. Dodge and Arnold J. Dodge, Appellants,
v.
CITY OF HALLANDALE, a Municipal Corporation, Appellee.
No. 346.
District Court of Appeal of Florida. Fourth District.
December 8, 1966.
Rehearing Denied January 16, 1967.
*196 Thomas H. Anderson and Karl V. Hart, of Shutts & Bowen, Miami, for appellants.
Fred J. Ward, of Crouch & Ward, Hallandale, for appellee.
TROWBRIDGE, C. PFEIFFER, Associate Judge.
This is an appeal from an order granting defendant's motion to dismiss a complaint, dismissing the complaint, and giving leave to plaintiffs to amend within a period of time. Although the order appealed from appears to be interlocutory in nature, we will treat the full appeal as an interlocutory appeal as we have the discretion to do. Burton v. Sanders, 170 So.2d 591 (2d Dist. 1965); Crepaldi v. Wagner, 128 So.2d 759 (1st Dist. 1961).
In 1947 the Legislature, by Ch. 24993, Laws of Fla., extended the boundaries of the City of Hallandale to include the *197 subject lands of plaintiffs below. Believing that their property was wild and unimproved and that the city could confer no benefits upon it, plaintiffs brought a suit in quo warranto in 1950 seeking ouster. At the conclusion of their case, however, the trial court directed a verdict for the defendant-city. Plaintiffs thereupon appealed to the Supreme Court and were successful in securing reversal as they had "* * * introduced sufficient evidence to make out a prima facie case and the trial judge was in error in granting the motion for a directed verdict * * *." State ex rel. Watson v. City of Hallandale, 52 So.2d 797 (Fla. 1951).
Upon remand the parties entered into a stipulation which included, among other things, the provisions:
"That the taxes to be paid by all of the co-relators on the above described lands shall not be increased by the Respondent until such time as the co-relators or their successors in title shall improve the properties above described.
"* * *.
"That this stipulation will be submitted to the Circuit Court for an appropriate consent decree * * *."
On this stipulation the court entered an order granting the petition for dismissal, dismissing the cause, and decreeing that the stipulation be confirmed and that all of the subject property be placed upon the tax roll of the city in accordance with the stipulation.
Needless to say, the circuit judge, after having been reversed, was undoubtedly happy that the controversy had come to a friendly conclusion, and so the story might well have ended.
In 1963, however, the city raised the assessed valuation upon the property after having abided by the stipulation and decree until then. Plaintiffs tried unsuccessfully to obtain relief in the original quo warranto suit, but were adjured by that chancellor to initiate the present equity suit for any possible relief. This action seeks to declare the original consent decree to be in full force and effect, to be valid, legal and binding on the parties, and to cancel and annul the tax certificates issued by the city. In the alternative, plaintiffs seek, should the court find the former decree to be invalid, that the subject property be taken out of the jurisdiction of the city and that refund be made of all taxes collected from the date of the original decree. Although the complaint does not state directly that the property has not been improved, the parties appear to accept this fact in their argument of the case.
To this complaint the city filed the motion to dismiss which was granted by the chancellor.
In appellants' brief four questions are stated. Appellee has restated each of these in its brief. We will play the game another round and re-restate these into two: Is the former decree valid and enforceable? Did the complaint in this case state a cause of action as to the alternative relief sought?
In a case involving one of the most beautiful waterfront communities in Florida, the Supreme Court held that the City of Stuart could not validly enter into an agreement giving special tax advantages to certain property owners. St. Lucie Estates, Inc. v. Ashley, 105 Fla. 534, 141 So. 738 (1932). In that case the constitutional requirements of equality and uniformity were held to prohibit a contract whereby the city remitted taxes and cancelled certificates in exchange for the dismissal of a quo warranto action regarding the disputed lands. Although the agreement there was not the same as the agreement here, we believe the principle is controlling and that a settlement giving these taxpayers favored treatment not accorded any other landowners cannot be valid.
The Stuart case does not, however, assist us in ascertaining the effect of judicial *198 approval of such an invalid agreement. In the Stuart case the circuit court had already denied the motion for ouster after a full trial on the merits and the landowners simply withdrew their appeal to the Supreme Court. Such action left in effect the final judgment establishing the city's jurisdiction over the property and the settlement required no court approval, adoption, or implementation.
Accordingly, in this case we have the additional problem of determining whether the action of the circuit court in dismissing the quo warranto suit, confirming the stipulation, and directing that the property be placed upon the city tax rolls in accordance with the stipulation, gave validity to what would otherwise be an invalid agreement.
Appellant argues that the Supreme Court reversal in 1951 established that the annexation was invalid and, hence, the City's only right to tax these lands arose out of the stipulation. This does not follow, however, since the Supreme Court held only that "The co-relators introduced sufficient evidence to make out a prima facie case and the trial judge was in error in granting the motion for a directed verdict at the close of co-relators' case and in denying the motion for a new trial." Had no settlement been made, the case would have come on again for trial as if the first hearing had never been held. The dismissal of the proceedings at that stage thus left the matter unlitigated as the defendant-city had not presented its case or had its day in court.
Under these circumstances, the presumption of validity of a statute leaves the city with a prima facie right to tax at fair valuation unless its stipulation or the court's action in approving the stipulation alter this result. As we have seen, the stipulation alone could not be sufficient to bind the city. St. Lucie Estates, Inc. v. Ashley, supra.
Since the city could not contract as it did with any validity, we must determine whether the court could have decreed in the absence of such a stipulation that the city not increase its assessment until the property should be improved.
In several cases the Supreme Court has held that, where unbenefited rural lands are included in a municipality and the owner has no adequate legal remedy and is not estopped, equity may enjoin the collection of municipal taxes. City of Sarasota v. Skillin, 130 Fla. 724, 178 So. 837 (1937); State ex rel. Atty. Gen. v. City of Avon Park, 108 Fla. 641, 149 So. 409 (Fla. 1933). It thus appears that quo warranto with ouster is not the only remedy available and that property which could be excluded may remain within a municipality without taxation until such time as benefits are available, so long as these facts are established by judicial decree. The Supreme Court mentioned this relief in the opinion reversing the directed verdict in the present dispute and held that the possibility of such equitable relief does not of itself bar landowners from seeking ouster through quo warranto when the facts so justify. State ex rel. Watson v. City of Hallandale, supra, 52 So.2d at 799.
Had the agreement in this case been to limit the assessment until circumstances changed sufficiently so that annexation could withstand attack, a consent decree to that effect would appear to have been valid since a court having power to prohibit any assessment would logically have the power to allow a partial assessment with the landowner's consent. The vice of the agreement actually made, however, is that it limits the power of the city to tax even though circumstances change so that there could be no question but that the land is properly incorporated within the city. Under the present agreement the city's power to assess at fair valuation might be prohibited forever if the landowners never made improvements. In a contested case a court would have no authority to make such a decree.
Any right that the landowners may have not to suffer a raise in assessment *199 must come from the sum of the stipulation and the decree. Since we have seen that the city could not make such an agreement and the court could not make such a decree in a contested case, it would follow that the court could not enter a valid consent decree upon a stipulation to that effect. While scientists today tell us that the total may sometimes be greater than the sum of its parts, law in its traditional resistance to change has not yet accepted such a "mod" theory.
At this point we have established that the consent decree was invalid when rendered and should have been reversed on appeal if one had been taken (and if a party who urged a court to enter a decree could then appeal it, a point we happily do not have to reach). The troublesome problem that remains, however, is whether an improper decree which has become final is binding upon the litigants. The general rule is that a court having jurisdiction of the parties and the subject matter has the power to make a mistake which is not subject to collateral attack. Cragin v. Ocean & Lake Realty Co., 101 Fla. 1324, 133 So. 569, aff'd, 101 Fla. 1324, 135 So. 795 (1931), appeal dismissed, Girard Trust Co. v. Ocean & Lake Realty Co., 286 U.S. 523, 52 S.Ct. 494, 76 L.Ed. 1267 (1932); Malone v. Meres, 91 Fla. 709, 109 So. 677 (1926). Thus, we have two matters of public policy in conflict: the policy that it is good for decrees to have finality and the policy that it is bad for cities to contract away their power to tax.
A discussion of the doctrine of estoppel is of no real value as it is recognized that cities may or may not be estopped by their actions "depending upon the circumstances" and this is just another means of stating the principle of balancing public policy considerations. We might say, for example, that the city would be estopped in this case except for the overriding policy involved. Such a conclusion requires the same basic determination of how strong the policy itself is as must be made when considering its conflict with the finality of decisions policy.
In the ultimate analysis it appears to us that since the public policy against allowing cities to contract away their power to tax is constitutionally based, since the effect of enforcing the consent decree here could perpetually limit the city in securing fair tax revenue from this property, and since the plaintiffs bear the burden of proof, an exception to the finality of decrees policy should be made in the present circumstances. Such a limitation upon the taxing power of a city is so horrendous that an uncontested judicial approval of it may not perpetually bind the city and its other taxpayers.
Accordingly, with this approval of the lower court's determination that the former decree is invalid and not enforceable, we reach our second question regarding the alternative relief requested. In his order granting the motion to dismiss, the chancellor found that the essential allegations upon which such a prayer for relief could be predicated are not present.
We concur in this conclusion. It is obvious that the main line of attack in the complaint was the validity and enforceability of the stipulation and the consent decree. There is no count which really pleads the elements necessary for quo warranto nor is there a count which alleges the elements of a tax refund suit. These matters are merely thrown into the prayer without adequate support in the body of the complaint. The fair procedure, once the primary issue was resolved against plaintiffs, was to allow further amendment and this is precisely what the trial court did. Since plaintiffs chose to stand on their original complaint without amendment, they cannot now urge error in denying the alternative relief insufficiently pleaded.
Affirmed.
ANDREWS, Acting C.J., and WALDEN, J., concur.