363 So.2d 321 (1978)
EASTERN SHORES Sales Co., Petitioner,
v.
CITY OF NORTH MIAMI BEACH, Respondent.
No. 51127.
Supreme Court of Florida.
June 1, 1978.
Rehearing Denied November 7, 1978.
James E. Tribble and J. Frost Walker, III of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for petitioner.
Burton B. Loebl, City Atty., North Miami Beach, for respondent.
ALDERMAN, Justice.
We grant certiorari to review the decision of the District Court of Appeal, Third District in City of North Miami Beach v. Eastern Shores Sales Company, 341 So.2d 825 (Fla.3d DCA 1977). The Third District reversed the trial court, expressly relying upon the decision of the Fourth District in Watson v. City of Hallandale, 193 So.2d 195 (Fla. 4th DCA 1966), cert. den. 201 So.2d 233 (Fla. 1967). The factual situation in Watson varies materially from the facts set forth in the body of the opinion under review.[1] The Third District's reliance upon Watson creates a misapplication of law sufficient to vest jurisdiction in this Court pursuant to Article V, Section 3(b)(3), Florida *322 Constitution. Wale v. Barnes, 278 So.2d 601 (Fla. 1973).
This case involves an annexation agreement entered into between the City of North Miami Beach and the predecessors in interest of Eastern Shores Sales Company. The determinative issue is whether the City, because of a 1957 final decree of the Circuit Court expressly upholding the validity of the agreement, is now estopped from contesting the validity of that agreement. We quash the decision of the Third District and hold that the City is collaterally estopped. We also disapprove the decision of the Fourth District in Watson.
In 1956, the City and the predecessors of Eastern Shores entered into an agreement to annex certain land to the City. The agreement provided that the City would not levy taxes against the annexed land until buildings had been constructed or revenue-producing improvements had been placed on the land. The agreement further provided:
[T]his contract shall become effective and operative only after the same has been duly approved by a final decree in the Circuit Court of Dade County, Florida, declaring that this contract is legal and can be carried out by both the parties hereto and that said decree has become final by virtue of having been affirmed by the Supreme Court of the State of Florida, or that the time for appeal to the Supreme Court of the State of Florida has expired. Upon the above events taking place, then and in that event, this contract shall become binding and operative between the parties.
The City filed suit in the Circuit Court seeking a declaratory decree approving the annexation and ratifying the agreement. Several resident taxpayers were permitted to intervene. These intervenors alleged that the agreement was unconstitutional.
In 1957, the Circuit Court approved the annexation and the agreement. Its final decree specifically found the agreement to be binding and, further, declared:
... [Both] the actions and proceedings of the officers of the plaintiff, City of North Miami Beach, in executing said contract, and the terms of said contract are hereby found to be legal, valid and proper under the Constitutions of the State of Florida and the United States of America and the Statutes of the State of Florida.
No appeal was taken from this decree, and after the decree became final, the City, in accordance with the agreement, annexed the land.
The Circuit Court reserved jurisdiction to enforce the terms of the agreement. In 1965, the court enforced the agreement, finding that the City was in contempt of court because it had levied taxes for the years 1961, 1962, 1963 and 1964 on Maule Lake (which is a part of the annexed land). The court ordered the City not to levy taxes on Maule Lake until a building or revenue-producing improvements are placed thereon. No appeal was taken from this order.
In 1973, Eastern Shores' land was placed on the City's tax roll, and city taxes were assessed retroactively to 1970. Eastern Shores was granted leave to intervene as a party defendant in the original 1957 law suit. The court entered an order requiring the City to show cause why it should not be held in contempt for violating the court's earlier decree. Eastern Shores alleged that no buildings had been constructed on its property nor had revenue-producing improvements been placed thereof. The City, in response, sought to be relieved from that portion of the 1957 decree that prohibits the City from taxing undeveloped land.
In its order, the trial court again held the City in contempt of court and adjudged that it could purge itself by terminating and cancelling any attempt to collect city taxes on Eastern Shores' property until buildings or revenue-producing improvements are constructed thereon. On appeal, the Third District was confronted with the issue of whether the City is estopped from contending that the agreement is unlawful. Relying on Watson v. City of Hallandale, supra, the District Court held that the City was not estopped to assert the invalidity of the 1956 judgment which would have *323 barred the assessment of taxes on Eastern Shores' property. We disagree and hold that the prior final decree is binding upon the parties to this suit.
The trial court was wrong when, in 1957, it allowed the City to contract away its taxing power relative to the undeveloped land described in the agreement.[2] This, however, is not sufficient reason now to void that portion of the final decree. In Einstein v. Davidson, 35 Fla. 342, 17 So. 563 (1895), we said:
A judgment that is absolutely null and void  a mere brutum fulmen  can be set aside and stricken from the record, on motion, at any time, and may be collaterally assailed... . But the judgment that is voidable only, because irregular or erroneous, must be moved against in time, by motion to vacate, or by resort to an appellate tribunal; otherwise it becomes an absolute verity, and passes beyond the control of the courts to disturb... .
In Aldrich v. Aldrich, 163 So.2d 276 (Fla. 1964), we concluded:
In summary, it is our opinion that the Circuit Court of Dade County in 1945 had "subject matter" jurisdiction of the cause and that, in exercising such jurisdiction, its decision as to alimony after the death of the husband was erroneous. It is our further view, however, that when the husband failed to take an appeal and give a reviewing court the opportunity to correct the error, the decree of the Circuit Court on such question passed into verity, became final, and is not now subject to collateral attack... .
In the present case, the trial court had "subject matter" jurisdiction;[3] therefore, the final decree, although erroneous, became binding upon the parties when no appeal was taken. Once the authority to decide has been shown, it cannot be divested by being incorrectly employed. Aldrich v. Aldrich, supra.
A distinction exists between the effect of a judgment as a bar to a second action on the same claim or demand and its effect as an estoppel in another action between the same parties on a different claim or cause of action. The difference to be drawn between these two doctrines is explained in Gordon v. Gordon, 59 So.2d 40 (Fla. 1952):
We have held as a general proposition that when a final decree or judgment of a court of competent jurisdiction becomes absolute it puts at rest and entombs in eternal quiescence every justiciable, as well as every actually adjudicated, issue. This pronouncement is considered by us as controlling only when res adjudicata is the proper test. By this we mean it is not controlling except in an instance wherein the second suit is between the same parties and is predicated upon the same cause of action as was the first. If the second suit is bottomed upon a different cause of action than that alleged in the prior case estoppel by judgment comes into play and only those matters actually litigated and determined in the initial action are foreclosed  not other matters which "might have been, but were not, litigated or decided." ...
The appropriate doctrine to be applied in this case is estoppel by judgment or collateral estoppel, which terms are used interchangeably. In the present litigation, there are issues that were not determined in the initial action, such as whether revenue-producing improvements have been placed on Eastern Shores' property and whether annual requests for tax exemptions are required to have been made. The 1957 decree did, however, unequivocally uphold the validity of the agreement between the city and the predecessors of Eastern Shores. This issue can not now be relitigated by these parties. The fact that the trial court retained jurisdiction for the purpose *324 of enforcing its decree did not make the judgment any less final or more subject to collateral attack. Finston v. Finston, 160 Fla. 935, 37 So.2d 423 (1948).
Although all of the elements essential to the application of the doctrine of estoppel by judgment are present, the City urges that this doctrine, which produces certainty as to individual rights and gives dignity and respect to judicial proceedings, should yield to what it terms the overriding public policy against a municipality's contracting away its taxing powers. Confronted with this question in a case involving an uncontested consent decree, the Fourth District, in Watson v. City of Hallandale, supra, at 199, stated:
At this point we have established that the consent decree was invalid when rendered and should have been reversed on appeal if one had been taken (and if a party who urged a court to enter a decree could then appeal it, a point we happily do not have to reach). The troublesome problem that remains, however, is whether an improper decree which has become final is binding upon the litigants. The general rule is that a court having jurisdiction of the parties and the subject matter has the power to make a mistake which is not subject to collateral attack. [Citations omitted.] Thus, we have two matters of public policy in conflict: the policy that it is good for decrees to have finality and the policy that it is bad for cities to contract away their power to tax.
.....
In the ultimate analysis it appears to us that since the public policy against allowing cities to contract away their power to tax is constitutionally based, since the effect of enforcing the consent decree here could perpetually limit the city in securing fair tax revenue from this property, and since the plaintiffs bear the burden of proof, an exception to the finality of decrees policy should be made in the present circumstances. Such a limitation upon the taxing power of a city is so horrendous that an uncontested judicial approval of it may not perpetually bind the city and its other taxpayers.
We reject this rationale. The fact that the decree in Watson was by consent did not make it any less conclusive or binding on the parties to the suit. Cf. Hay v. Salisbury, 92 Fla. 446, 109 So. 617 (1926); Cabinet Craft, Inc. v. A.G. Spanos Enterprises, Inc., 348 So.2d 920 (Fla.2d DCA 1977). We therefore hold in the present case that the doctrine of collateral estoppel does apply. The constitutional validity of the annexation agreement was determined in the original declaratory judgment action, and a decree was entered which, as to the parties to this suit, became conclusive as to that issue. The decree is no less final because no appeal was taken.
Accordingly, the decision of the District Court of Appeal, Third District, is quashed; the decision of the District Court of Appeal, Fourth District, in Watson v. City of Hallandale, supra, is disapproved; and this cause is remanded for further proceedings.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, ENGLAND and HATCHETT, JJ., concur.
SUNDBERG, J., concurs in result only.
NOTES
[1] The decree in Watson was a consent decree by stipulation of the parties, while the decree involved in the present case was the result of contested adversary proceedings.
[2] Lykes Brothers, Inc. v. City of Plant City, 354 So.2d 878 (Fla. 1978); City of Naples v. Conboy, 182 So.2d 412 (Fla. 1965); St. Lucie Estates, Inc. v. Ashley, 105 Fla. 534, 141 So. 738 (Fla. 1932); Tampa Shipbuilding & Engineering Co. v. City of Tampa, 102 Fla. 549, 136 So. 458 (1931).
[3] Ch. 87, Fla. Stat. (1955); Art. V, § 6(3), Fla. Const. (1885).