In re Kirsten ZOERNACK, a/k/a Kirsten Becker, Debtor.

No. 00–07560–8W7.

United States Bankruptcy Court, Middle District of Florida, Tampa Division.

Jan. 24, 2003.

Stanley M. Krawetz, P.A., Wallace, Browning, Clayton & Krawetz, Sarasota, FL, pro se.

David L. Schrader, Tampa, FL, for Debtor.

Douglas N. Menchise, Clearwater, FL, trustee.

### MEMORANDUM DECISION DENYING DEBTOR'S MOTION TO AVOID CHARGING LIEN OF STANLEY M. KRAWETZ, P.A.

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

This case came on for hearing on November 14, 2002 ("Hearing"), on the Debtor's Motion to Avoid Charging Lien ("Motion")(Doc. No.78) of Stanley M. Krawetz, P.A. ("Krawetz, P.A."). For the following reasons, and as announced in open court at the Hearing, the Motion is denied.

### Findings of Fact

Krawetz, P.A. is the law firm that formerly represented the Debtor in this bankruptcy case and served as her counsel in a state court action for dissolution of her marriage with Steven Zoernack, who is also a debtor before this court with his own pending chapter 7 case (Case No. 99–19684–7). These two cases have a long and contentious history, but, fortunately, the facts relevant to the Motion can be briefly summarized.

Prior to the entry of the final judgment of dissolution of marriage on May 7, 2002, the Zoernacks' primary marital asset was a single-family home located in Casey Key,

Florida ("Home"). The title to the Home was in the name of the Debtor. However, the parties separated prior to the commencement of the Debtor's bankruptcy case, and the Debtor no longer occupied the Home when her bankruptcy case was filed. Nevertheless, the Debtor claimed the Home as exempt in her bankruptcy schedules. Thereafter, Douglas Menchise, the Chapter 7 Trustee in this case ("Trustee"), filed an objection to the Debtor's claim of exemption with respect to the Home ("Homestead Objection"), arguing in essence that the Debtor had abandoned her homestead when she ceased to reside there. The Debtor responded that she had been forcibly removed from the Home and had never voluntarily abandoned it.

Subject to a future resolution of the Homestead Objection and with the consent of all parties, the Home was sold during the pendency of this case for approximately $3.3 million. The net proceeds from the sale after payment of the various mortgages, certain liens, and real estate taxes— approximately $371,000 ("Funds")—were paid to the Trustee. Soon after the sale of the Home, the Trustee and the Debtor reached a compromise with respect to the Homestead Objection under which the Home was allowed as exempt. However, the allocation of the proceeds among various claimants remained in dispute as of the date of the Hearing.

Krawetz, P.A. was one of those seeking payment from the Funds. It filed an amended application for payment of fees (Doc. No. 72) ("Application") in which it asserted that it was entitled to a charging lien against the Funds in the amount of $52,374.79 ("Charging Lien"). The Charging Lien had been granted to Krawetz, P.A. by the state court judge ("State Court") presiding over the marital dissolution proceedings through the entry of a Final Judgment Granting Charging Lien

("State Court Judgment"). The State Court Judgment provides, in relevant part, that:

> B. The law office of STANLEY M. KRAWETZ, P.A. is granted a Charging Lien against KIRSTEN ZOERNACK in the amount of $52,374.79.
>
> C. Judgment is hereby entered in the amount of $52,374.79. This judgment shall attach to, encumber, and be a lien upon any and all proceeds and other entitlements and/or recoveries that the Wife receives or retains in or as a result of the instant litigation, or any proceeds received by KIRSTEN ZOERNACK against which let execution issue.

*State Court Judgment* at 2.

Although the Debtor had "consented to the entry of a Final Judgment" imposing the Charging Lien in the state court proceedings, *State Court Judgment* at 1, the Debtor responded to Krawetz, P.A.'s Application by filing the Motion, challenging the validity of and, consequently, seeking to avoid the Charging Lien.

### Conclusions of Law

In the Motion, the Debtor acknowledges that a valid charging lien is not a judicial lien subject to avoidance under section 522(f)(1). Motion, ¶ 9. However, the Debtor contends that the lien created by the State Court Judgment is nevertheless avoidable under that section because it was "wrongfully entered" by the State Court. Motion ¶¶ 9–13. The relief sought by the Debtor in the Motion is premised on the proposition that this Court is not bound by the State Court Judgment granting the Charging Lien to Krawetz, P.A. In support of this argument, the Debtor relies on *Weed v. Washington (In re Washington)*, 242 F.3d 1320 (11th Cir.2001) ("*Washington*"). At first blush, this case appears to support the Debtor's position that this Court may review the underlying merits of the Charging Lien, and if this Court deter-

mines that the Charging Lien is not valid under Florida law, then the lien created by the State Court Judgment would be subject to avoidance under section 522(f)(1).

In *Washington*, at issue was the avoidability of an attorney charging lien under section 522(f). The Eleventh Circuit affirmed District Court Judge Susan Bucklew's ("District Court") conclusion that charging liens arise by operation of law, without judicial action, and are thus not obtained through the judicial process—that is, they are not "judicial liens" for purposes of section 522(f)(1). However, the Eleventh Circuit went further; it vacated the District Court's order and remanded the case to the District Court to "address Washington's arguments that the lien failed to meet the requirements of a valid attorney's charging lien and that charging liens are insufficient to create an interest in real property under Florida law." *Id.* at 1325. The Eleventh Circuit remanded the case for this purpose notwithstanding the fact that the Charging Lien in *Washington* had been recognized and approved in a final judgment by a state court of competent jurisdiction.

The Debtor argues in this case that in essence *Washington* stands for the proposition that—notwithstanding the entry of a final judgment by a state court—a federal court may review the conclusions of the state court and, if it determines that the state court erred in entering the judgment, disregard the conclusions and findings of the state court contained in a final judgment.[1] As discussed below, this interpretation of the holding in *Washington* would mean that principles of collateral estoppel, res judicata, and the *Rooker–Feldman* doctrine[2] were overruled by the Eleventh Circuit when it entered its decision in *Washington*. This Court does not read *Washington* to have such far-reaching consequences for reasons discussed below.

First, the preclusive effect of the State Court Judgment under the doctrines of collateral estoppel or res judicata and the applicability of the *Rooker–Feldman* doctrine were not raised by the parties or dealt with in any way by the *Washington* court in its decision. It is noteworthy that the Eleventh Circuit made a point in the decision that, "[t]he inadequacy of the briefing to assist the Court in resolving the state law issues presented by this appeal further warrants our remand to the district court...." *Id.* at fn. 3. Indeed, both of the parties in the appeal were pro se. The Eleventh Circuit also noted that the

---

**1.** Essentially, the Debtor argues that this Court is bound to follow *Washington*, because of the "Binding Precedent Rule." This rule affords courts no discretion where a higher court has already decided the issue before it. *Johnson v. DeSoto County Board of Commissioners*, 72 F.3d 1556, fn. 2 (11th Cir.1996). This rule is distinguished from "stare decisis," which means that like facts will receive like treatment in a court of law, *Flowers v. U.S.*, 764 F.2d 759, 761 (11th Cir.1985), but nonetheless accords a court discretion to depart from one of its own prior holdings if a compelling reason to do so exists. *Johnson v. DeSoto County Board of Commissioners, supra; Jaffree v. Wallace*, 705 F.2d 1526, 1532 (11th Cir.1983).

**2.** As discussed in detail below, collateral estoppel or issue preclusion bars a party from relitigating an issue determined against that party in an earlier action. *See, e.g., I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir.1986). Under res judicata or claim preclusion "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *See, e.g., Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Under the *Rooker–Feldman* doctrine, the lower federal courts have no jurisdiction to review state court judgments. *See generally Moore's Federal Practice 3d* § 133.30[3][a] at 133–23 (3d ed.2001).

debtor appellant filed the same brief as was used in the District Court below, and the appellee failed to file any brief at all. *Id.*

■ It also appears that the only "justiciable issue" initially on appeal to the District Court was the narrow legal issue of whether an attorney's charging lien constituted an avoidable "judicial lien." Order of District Court on remand of June 28, 2001, Doc. No. 67 at 4, District Court Case No. 8:98–Civ–2142–T–24E ("District Court Decision on Remand"). The District Court did not consider the issue of the validity of the attorney appellant's charging lien to be in dispute, and, accordingly, did not decide the issue in the initial appeal of the bankruptcy court's decision. Ordinarily, the general appellate rule is that an issue raised for the first time before an appellate court is not considered by that appellate court. *Etienne v. Inter–County Security Corp.,* 173 F.3d 1372, 1375 (11th Cir. 1999); *Roberts v. Commissioner of Internal Revenue,* 175 F.3d 889, 898, fn. 11 (11th Cir.1999).

It would appear, therefore, that the Eleventh Circuit's decision to remand the case for further consideration of the validity of the charging lien was not a holding in its decision. Clearly, it was in no way pivotal or necessary to its determination that a charging lien is not avoidable under section 522(f). As such, it is at best "dictum" and has no precedential effect. *Denno v. School Board of Volusia County,* 218 F.3d 1267, 1283 (11th Cir.2000); see also *New Port Largo, Inc. v. Monroe County,* 985 F.2d 1488, 1500 n. 7 (11th Cir. 1993)(Edmondson, J., concurring)(suggesting that *dictum is a statement not squarely presented by the facts and one not absolutely necessary to the decision of the concrete case before the court*).

A second reason that this Court does not read *Washington* so broadly arises from what occurred when the case was remanded to the District Court. On remand, the District Court, citing to *Community Bank of Homestead v. Torcise,* 162 F.3d 1084, 1086 (11th Cir.1998), held that the doctrine of collateral estoppel prevented the debtor in *Washington* from asserting the charging lien was invalid because the state court had already ruled on this very issue. District Court Decision on Remand at 5.

■ Indeed, the Full Faith and Credit Act, 28 U.S.C. § 1738, compels a federal court to accord a state court judgment the same preclusive effect that it would be accorded by the rendering state court. *In re Keene,* 135 B.R. 162 (Bankr.S.D.Fla. 1991) (citing *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)). *Moore's Federal Practice* 3d § 133.30[1] at 133–20 (3d ed.2001). The Eleventh Circuit in *In re St. Laurent,* 991 F.2d 672, 676 (11th Cir.1993), has expressly stated that, "[i]f the prior judgment was rendered by a state court, then the collateral estoppel law of the state must be applied to determine the judgment's preclusive effect." *See also In re Itzler,* 247 B.R. 546, 548 (Bankr. S.D.Fla.2000). The statute requires all federal courts to give preclusive effect to state court judgments whenever the courts of the state in which the judgments were rendered would do so. *Pelletier v. Zweifel,* 921 F.2d 1465, 1501 (11th Cir.1991) (citing *Allen v. McCurry,* 449 U.S. 90, 96, 101, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).

■ Since the State Court Judgment was entered by a Florida court applying Florida law, we turn to Florida law to determine its preclusive effect. Under Florida law, the elements of collateral estoppel are as follows: (1) the identical issue has been fully litigated, (2) by the same parties, and (3) a final decision has been rendered by a court of competent

jurisdiction. *Community Bank of Homestead v. Torcise*, 162 F.3d 1084, 1086 (11th Cir.1998) (citing *Essenson v. Polo Club Assocs.*, 688 So.2d 981, 983 (Fla. 2d DCA 1997)).

■ Clearly, we are dealing with the same parties. On the one hand, we have the Debtor against whom the charging lien was entered (pursuant to the State Court Judgment) and who is seeking avoidance of that judgment in this Court. On the other hand, we have the Debtor's prior law firm, which is the holder of the Charging Lien under the State Court Judgment. There is also no dispute that the State Court had jurisdiction to render the State Court Judgment.

The element of collateral estoppel that requires that the identical issue have been "fully litigated" does bear some discussion, however, because in this case, the State Court Judgment was entered by consent and in fact was not "litigated" in an adversarial sense. In this regard, this Court must determine to what extent a Florida court would be bound to give preclusive effect to a consent judgment.

The Florida Supreme Court dealt with this issue in the case of *Eastern Shores Sales Co. v. City of North Miami Beach*, 363 So.2d 321 (Fla.1978). In *Eastern Shores*, the Florida Supreme Court had before it the issue of whether the doctrine of collateral estoppel (also referred to interchangeably by the court as "estoppel by judgment"), precluded the City of North Miami Beach from attacking an annexation agreement that it had entered into in 1956 with certain predecessor landowners which precluded the city from taxing their land until buildings had been constructed on the land. Importantly, the annexation agreement had been approved and ratified by a final judgment. In the later action, the city sought to be relieved from that portion of the 1957 decree that prohibited the

city from taxing the undeveloped land. *Id.* at 322–323.

In deciding the issue, the Supreme Court quoted from its prior decision in *Gordon v. Gordon*, 59 So.2d 40 (Fla.1952), stating "[i]f the second suit is bottomed upon a different cause of action than that alleged in the prior case estoppel by judgment comes into play and only those matters actually litigated and determined in the initial action are foreclosed not other matters which 'might have been, but were not, litigated or decided.'" *Id.* at 323. The Court noted that the 1957 decree dealt with some issues that were not before the court in the present litigation. However, the 1957 decree did "unequivocally uphold the validity of the agreement between the city and the predecessors of Eastern Shores. This issue can not now be relitigated by these parties." *Id.* at 323.

In its ruling, the Court specifically rejected the approach taken by the Fourth District Court of Appeals in the case of *Watson v. City of Hallandale,* which held that an exception to the "finality of decrees policy should be made" in the case of a city contracting away its power to tax. *Watson v. City of Hallandale*, 193 So.2d 195, 199 (Fla. 4th DCA 1966), *cert. den.* 201 So.2d 233 (Fla.1967). In rejecting this rationale, the Court in *Eastern* held that "[t]he fact that the decree in Watson was by consent did not make it any less conclusive or binding on the parties to the suit." *Id.* at 324 (citing *Hay v. Salisbury*, 92 Fla. 446, 109 So. 617 (1926)("A judgment by default or upon confession is, in its nature, just as conclusive on the rights of the parties before the court, as a judgment upon demurrer or verdict.")). "We therefore hold in the present case that the doctrine of collateral estoppel does apply." *Id.* Likewise, just as in the *Washington* case after remand, the Debtor is also precluded from challenging the validity of the

Charging Lien now in this Court under the doctrine of collateral estoppel.

Two other judicial doctrines also proscribe this Court's review of the State Court Judgment. Under the facts of this case, the closely related doctrines of res judicata and *Rooker–Feldman* also preclude the Debtor from arguing that the Charging Lien is invalid.

▪ Res judicata or claim preclusion "prevents a party from suing on a claim which has been previously litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." *Moore's* § 131.10[1] at 131–15. The basic difference between res judicata or claim preclusion and collateral estoppel or issue preclusion is that claim preclusion applies to whole claims, whether litigated or not, whereas issue preclusion applies to particular issues that have been contested and resolved. *Moore's* § 131.13[2] at 131–25. As stated by the Florida Supreme Court in reference to Florida law,

> Res judicata bar[s] a later suit between the same parties upon the same cause of action, the first adjudication being final as to matters that were or could have been presented, while estoppel by judgment [i.e., collateral estoppel] would be applied to prevent a party from re-litigating questions common to two causes of action when those questions were actually decided in the first.

*Avant v. Hammond Jones, Inc.,* 79 So.2d 423, 423–424 (Fla.1955).

▪ The underlying rationale behind the doctrine of res judicata is that the "full and fair opportunity to litigate protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and

fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Ragsdale v. Rubbermaid, Inc.,* 193 F.3d 1235, 1238 (11th Cir.1999)(citing *Montana v. U.S.,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). "By declaring an end to litigation, the doctrine adds certainty and stability to social institutions. This certainty in turn generates public respect for the courts." *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499, 1503 (11th Cir.1984).

▪ Given that we are dealing with a final judgment of a Florida court, we must consider the four elements of res judicata under Florida law: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality in the person for or against whom the complaint is made. *Adams v. Sewell,* 946 F.2d 757, 762 (11th Cir.1991). The first element, the "thing sued for," relates to the relief demanded in the two forums. In this case, the relief demanded in the State Court was the judicial recognition of an attorney charging lien. In this Court, the Debtor seeks relief in the form of a judicial determination that the Charging Lien did not arise under Florida law and should not be given effect. The fact that the relief requested in one case is the flip side of the relief granted in the other case—that is, it is "a different form or measure of relief"—does not preclude application of the doctrine of res judicata under Florida law, so long as the cause of action is substantially the same in both actions. *City of Anna Maria v. Miller,* 91 So.2d 333, 335 (Fla.1956).

Turning to whether the cause of action is the same, the courts applying Florida law have uniformly held that "[t]he determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions." *Al-*

*brecht v. State,* 444 So.2d 8, 12 (Fla.1984); *Adams v. Sewell,* 946 F.2d 757, 762 (11th Cir.1991)(citing *Albrecht*); *Heney v. Windsor Corporation,* 777 F.Supp. 1575, 1577 (M.D.Fla.1991)(Kovachevich)(citing *Albrecht*). In this case, because the same evidence would be determinative of the existence of the Charging Lien—whether it be in the context of a state court proceeding to impose the lien or a bankruptcy proceeding to avoid it—the causes of action are identical. As quoted by the *Heney* court, "One cannot revisit the same transaction or occurrence, already adjudicated between the same parties, by resort to a new legal theory in a separate lawsuit." *Heney,* 777 F.Supp. at 1578 (quoting from *Florida Patient's Compensation Fund v. St. Paul Fire and Marine Ins. Co.,* 535 So.2d 335, 338 (Fla. 4th DCA 1988), *decision approved,* 559 So.2d 195 (Fla.1990)). As to the remaining two elements—identity of the parties and identity of the quality in the person for or against whom the complaint is made—this is not an issue in this case as the parties are identical in all respects.

It is also clear that the fact that the State Court Judgment in this case was a consent judgment does not preclude the application of the doctrine of res judicata. Under Florida law, a consent judgment "is entitled to the same preclusive, res judicata effect as any other judgment issued by a Florida court." *Arrieta–Gimenez v. Arrieta–Negron,* 551 So.2d 1184, 1186 (Fla. 1989). As stated by the Florida Supreme Court, "While it is true ... that a consent judgment is a judicially approved contract, and not a judgment entered after litigation, it is a judgment nonetheless." *Id.*

 Finally, the *Rooker–Feldman* doctrine stands in the way of this Court's review of the State Court Judgment. The *Rooker–Feldman* doctrine is the offshoot of two Supreme Court cases decided 60 years apart: *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). As can be gleaned from a review of these two cases, the underlying rationale for this doctrine derives from the statutory authority of a federal court to hear disputes, i.e., its jurisdiction. In this respect, "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court judgment]." *Rooker, supra,* 263 U.S. at 416, 44 S.Ct. 149 (citing to the predecessor to 28 U.S.C. § 1257).

 "The jurisdiction possessed by the District Courts is strictly original" as opposed to appellate.[3] *Id.* (citing to the predecessor to 28 U.S.C. §§ 1331 and 1334). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir.2001).

 This doctrine has a "close affinity" to res judicata and collateral estoppel. *Agripost, Inc. v. Miami–Dade County,* 195 F.3d 1225, 1229, fn. 7 (11th Cir. 1999). The *Rooker–Feldman* doctrine has been described by the Eleventh Circuit as one that limits federal courts' authority, other than the United States Supreme Court, to review the state courts' final judgments. *Goodman v. Sipos,* 259 F.3d

---

**3.** A narrow exception to a district court's original jurisdiction is found in 28 U.S.C. § 158 which provides that "district courts ... shall have jurisdiction to hear appeals ... from final judgments, orders and decrees ... of bankruptcy judges." 28 U.S.C. § 158(a).

1327, 1332 (11th Cir.2001) (citing to *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000)). This doctrine also extends to claims that are "inextricably intertwined" with the state court's judgment. *Id.* The underlying applicability of this doctrine is due to "reasons that go to the heart of our system of federalism—the dual dignity of state and federal court decisions...." *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir.1996). "The *Rooker–Feldman* doctrine places limits on the subject matter jurisdiction of federal district courts ... over certain matters related to state court litigation." *Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir.2001).

 As summarized in the Eleventh Circuit, this doctrine "provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts." *Id.* Yet this is exactly what the Debtor in this case would have this Court do—sit as an appellate court and re-review the validity of the Charging Lien. The Court must decline the Debtor's invitation to do so based upon the *Rooker–Feldman* doctrine.

Thus, even if this Court were to interpret the *Washington* case as requiring a review of the merits of the State Court Judgment, this Court would also, nonetheless, find itself bound by the State Court Judgment with respect to the validity of the Charging Lien.

### Conclusion

The Court's denial of the Debtor's Motion is compelled by the doctrines of collateral estoppel, res judicata, and *Rooker–Feldman*. A separate order has been entered reflecting this Court's ruling.